UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
3:12-cv-234-RJC
(3:10-cr-282-RJC-1)

| | |
|---|---|
| SHIRLEY OUTING GRAVES, ) | |
| ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| ) | **ORDER** |
| vs. ) | |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| ) | |
| Respondent. ) | |
| _____ ) | |

**THIS MATTER** is before the Court on Petitioner's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255, (Doc. No. 1), on the Government's Response to Petitioner's Motion to Vacate, (Doc. No. 7), and on Petitioner's Reply, (Doc. No. 10).

I.  BACKGROUND

Petitioner was part of a conspiracy in which she and others stole hundreds of thousands of dollars' worth of merchandise from retail stores in Charlotte, North Carolina, from January 2003 to February 2009. (Criminal Case No. 3:10-cr-282, Doc. No. 15 at 6: PSR). Petitioner's co-conspirators stole merchandise from retailers, returned the merchandise in exchange for gift cards, and then sold the gift cards to Petitioner at a discount. (Id., Doc. No. 15 at 6-7). Petitioner also provided her co-conspirators with stolen driver's licenses to allow them to circumvent the retailers' restrictions on the number of returns. (Id. at 6).

Investigators verified Petitioner's participation in the conspiracy by conducting five undercover transactions with Petitioner involving purportedly stolen gift cards and driver's licenses between August 2007 and February 2008. See (Id. at 4-6). One of Petitioner's co-conspirators also identified her as a participant, indicating that he and others routinely sold stolen gift cards to her. (Id. at 5). Before any federal charges were filed, Petitioner met with investigators, during which she described the conspiracy, including her role, and identified several of her co-conspirators. (Id. at 5-6).

On December 22, 2010, Petitioner was charged in a one-count Bill of Information with conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1343. (Id., Doc. No. 1 at 3: Bill of Information). Petitioner entered into a written plea agreement, pursuant to which she admitted to the charge of conspiracy to commit wire fraud and agreed to plead guilty to the Information. (Id., Doc. No. 5: Plea Agreement). The parties agreed to a joint recommendation regarding Petitioner's base offense level under the guidelines. (Id., Doc. No. 5 at 2). In exchange for the Government's concessions, Petitioner agreed to waive all rights to contest her conviction, except for claims of ineffective assistance of counsel and prosecutorial misconduct. (Id. at 4). Petitioner also agreed to provide truthful information about the wire fraud conspiracy, as well as any other criminal activity within her knowledge. (Id. at 5). Finally, the plea agreement provided that the Government would decide, in its sole discretion, whether Petitioner's cooperation was substantial and merited a motion pursuant to United States Sentencing Guidelines ("U.S.S.G.") § 5K1.1 for imposition of a sentence below the guidelines range or for any other reduction based on Petitioner's assistance. (Id. at 6).

On January 19, 2011, Magistrate Judge David S. Cayer conducted Petitioner's Plea and Rule 11 hearing. See (Id., Doc. No. 27: Plea and Rule 11 Hearing Tr.). During the plea colloquy, Judge Cayer verified that Petitioner had received, and Petitioner stated that she understood, the charge and the maximum sentence. (Id., Doc. No. 27 at 3). Petitioner also acknowledged that she understood she was waiving her right to indictment by a grand jury and intended to plead guilty to the Information. (Id. at 3-4). Before placing Petitioner under oath, Judge Cayer asked the Government to once again summarize the charge and statutory penalty. (Id. at 5-6). Petitioner then affirmed that she understood the charge and that she was, in fact, guilty of conspiracy to commit wire fraud. (Id. at 8).

The Government next summarized key provisions of Petitioner's plea agreement, after which Petitioner stated that she had discussed the plea agreement with her attorney and that she understood the terms, including the waiver of the right to appeal or otherwise challenge her conviction. (Id. at 11-12). Judge Cayer also verified that Petitioner had received no promises of leniency or for a light sentence other than what was set forth in her plea agreement. (Id. at 12). Petitioner confirmed that she had discussed any possible defenses with her attorney and was satisfied with her attorney's services. (Id. at 11-12). Petitioner's attorney stated similarly that she had discussed the terms of the plea agreement with Petitioner and was satisfied that Petitioner understood them. (Id. at 13). At the conclusion of the colloquy, Judge Cayer found Petitioner's plea to be knowingly and voluntarily made and accepted it. (Id. at 15).

Before sentencing, the probation officer prepared a presentence report that calculated a base offense level of seven for Petitioner's wire fraud conspiracy conviction. (Id., Doc. No. 15 at 9: PSR). Consistent with the joint recommendation set forth in the plea agreement, the probation officer then added a ten-level enhancement based on the pecuniary harm that resulted, a two-level enhancement

3

because the fraud had ten or more victims, and an additional two-level enhancement because the offense involved the production or trafficking of an unauthorized access device or authentication feature. (Id.). After subtracting three levels for Petitioner's acceptance of responsibility, the probation officer calculated a total offense level of eighteen. (Id.). Petitioner qualified for a criminal history category of I which, when coupled with the total offense level of eighteen, resulted in a guidelines range of twenty-seven to thirty-three months. (Id. at 15). Petitioner did not object to the presentence report.

This Court conducted Petitioner's sentencing hearing on September 22, 2011. At the outset of the hearing, the parties stipulated to the factual basis set forth in the presentence report to support Petitioner's guilty plea. (Id., Doc. No. 28 at 2: Sentencing Hr'g Tr.). This Court then adopted Judge Cayer's finding that Petitioner knowingly and voluntarily pled guilty to conspiracy to commit wire fraud. (Id. at 2). After accepting Petitioner's plea, this Court next considered the Government's motion for reduction of sentence filed under U.S.S.G. § 5K1.1, based on Petitioner's substantial assistance. In support of the motion, the Government summarized Petitioner's assistance, including her admission of her own criminal conduct, description of the fraudulent scheme, and identification of co-conspirators and victim retailers. (Id. at 4). Based on Petitioner's assistance, the Government recommended a one-third reduction in the guidelines range and a sentence at the low end of that range of eighteen months in prison. (Id.).

In response, Petitioner's counsel requested an even greater departure down to an offense level of eleven, which would make Petitioner eligible for a sentence involving community or home confinement rather than a prison term. In support of the request, Petitioner's counsel

4

emphasized the immediacy of Petitioner's acceptance of responsibility, detailed Petitioner's truthful description of the scheme, highlighted Petitioner's fear of retribution from co-conspirators, and noted the timeliness of Petitioner's cooperation. (Id. at 7-11). In addressing the sentencing factors set forth in 18 U.S.C. § 3553(a), Petitioner's counsel noted that the crime was nonviolent and involved economic harm, and highlighted Petitioner's family characteristics, including that she is responsible for caring for her disabled mother. (Id. at 12-16).

Before announcing its sentence, this Court adopted the guidelines calculations set forth in the presentence report and granted the Government's motion for downward departure. (Id. at 3; 6). This Court then sentenced Petitioner to eighteen months in prison. (Id. at 24). In doing so, this Court noted that it had considered Petitioner's request for a further variance or departure, including the claim that Petitioner played a "caretaking role" for her mother, but the Court found that a sentence of eighteen months was appropriate given the seriousness of the offense and need for deterrence. (Id. at 25). This Court entered judgment on September 30, 2011, and amended that judgment to correct a clerical mistake in the restitution order on February 28, 2012. (Id., Doc. No. 19: Judgment; Doc. No. 29: Amended Judgment). Petitioner filed a notice of appeal but later voluntarily dismissed her appeal. See (Id., Doc. No. 22: Notice of Appeal; Doc. No. 30: Mandate).

On April 16, 2012, Petitioner filed the instant Motion Under § 2255 to Vacate, Set Aside, or Correct Sentence, raising three claims of ineffective assistance of counsel and one claim of prosecutorial misconduct. (Doc. No. 1). On November 15, 2012, the Government filed a Response to the motion to vacate, and on January 2, 2013, Petitioner filed a Reply. (Doc. Nos. 7; 10).

5

## II. STANDARD OF REVIEW

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . ." in order to determine whether the petitioner is entitled to any relief on the claims set forth therein. After examining the record in this matter, the Court finds that the argument presented by the Petitioner can be resolved without an evidentiary hearing based on the record and governing case law. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

## III. DISCUSSION

### A. Ineffective Assistance of Counsel

The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions, the accused has the right to the assistance of counsel for his defense. U.S. CONST. amend. VI. To show ineffective assistance of counsel, Petitioner must first establish a deficient performance by counsel and, second, that the deficient performance prejudiced him. See Strickland v. Washington, 466 U.S. 668, 687-88 (1984). In making this determination, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689; see also United States v. Luck, 611 F.3d 183, 186 (4th Cir. 2010). Furthermore, in considering the prejudice prong of the analysis, the Court "can only grant relief under . . . Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998) (quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993)). Under these circumstances, the petitioner "bears the burden of affirmatively proving prejudice." Bowie v. Branker, 512 F.3d 112, 120 (4th Cir. 2008). If the petitioner fails to meet this burden, a "reviewing court need not even consider the performance prong." United

States v. Rhynes, 196 F.3d 207, 232 (4th Cir. 1999), opinion vacated on other grounds, 218 F.3d 310 (4th Cir. 2000).

   **1. Ineffective Assistance of Counsel Claim Based on Trial and Appellate Counsels' Alleged Failure to Explain the Plea Agreement to Petitioner**

Petitioner first contends that both her trial and appellate counsel failed to explain effectively the plea agreement and charges Petitioner faced. Statements made by a defendant under oath at the plea hearing carry a "strong presumption of verity" and present a "formidable barrier" to subsequent collateral attacks. Blackledge v. Allison, 431 U.S. 63, 73-74 (1977). Indeed, "in the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should dismiss . . . any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." United States v. Lemaster, 403 F.3d 216, 221-22 (4th Cir. 2005). In this context, "[t]he subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal." Blackledge, 431 U.S. at 74.

In support of her claim, Petitioner alleges, without elaboration, that both her trial and appellate attorneys failed to "effectively and efficiently explain the plea agreement and its ultimate consequences." (Doc. No. 1 at 14). The record, including the sworn statements Petitioner made during the plea colloquy, contradicts Petitioner's claim. At the Rule 11 hearing, both Judge Cayer and the Government summarized the charge and the maximum sentence Petitioner faced. (Criminal Case No. 3:10-cr-282, Doc. No. 27 at 2-4: Plea and Rule 11 Hearing Tr.). Petitioner affirmed that she understood the charge and had discussed the Information and application of the sentencing guidelines with her attorney. (Id. at 6; 8). The Government also summarized the key terms of Petitioner's plea agreement, including the parties' joint

recommendation regarding the guidelines range. (Id. at 9-11). Petitioner verified that she understood the terms of the plea agreement and, after discussing potential defenses with her attorney, was satisfied with her attorney's services. (Id. at 12-13).

Petitioner has not shown any "extraordinary circumstances" to rebut the truth of her sworn statements during the Rule 11 hearing, nor has Petitioner established prejudice as a result of her attorney's alleged pre-plea ineffective assistance. See Lemaster, 403 F.3d at 221-22. Critically, Petitioner does not contend that that she would have proceeded to trial but for the alleged errors. As such, even if Petitioner were able to establish deficient performance, which she has not, she has nevertheless failed to establish prejudice. In sum, Petitioner has not shown ineffective assistance of counsel based on trial and appellate counsels' failure to explain the plea agreement to Petitioner.

### 2. Petitioner's Contention that She Received Ineffective Assistance of Counsel at Sentencing

In support of her claim that she received ineffective assistance at sentencing, Petitioner alleges that her trial attorney failed to (1) argue that Petitioner provided substantial assistance; or (2) raise the issue of Petitioner's caretaking responsibility for her elderly mother. The facts directly contradict Petitioner's allegations. With respect to substantial assistance, Petitioner asserts that her attorney failed to "make [the] government uphold its agreement" and to "produce and prove that the defendant provided substantial assistance." (Doc. No. 1 at 15). Contrary to Petitioner's assertion, the plea agreement did not require the Government to move for a reduction in sentence based on Petitioner's assistance but, instead, stated that any such determination was within the Government's "sole discretion." (Criminal Case No. 3:10-cr-282, Doc. No. 5 at 6: Plea Agreement). In any event, having no obligation to move for a reduction, the Government

8

<u>did</u>, in fact, request a downward departure pursuant to § 5K1.1 based on Petitioner's substantial assistance. Furthermore, after this Court granted the Government's § 5K1.1 motion, Petitioner's attorney argued for an even further departure or variance. In support of her request, Petitioner's attorney addressed each of the factors set forth in § 5K1.1(a), detailing Petitioner's truthful and timely assistance, as well as Petitioner's fear of retribution. (<u>Id.</u>, Doc. No. 28 at 7-10: Sentencing H'rg Tr.). There is, therefore, no support for Petitioner's claim that her attorney failed to argue substantial assistance, and this Court's rejection of Petitioner's arguments does not render counsel's representation ineffective.

In addition to her claim regarding substantial assistance, Petitioner contends that she received ineffective assistance at sentencing based on her attorney's failure to argue for a reduction based on Petitioner's "family ties and responsibilities." (Doc. No. 1 at 14). In support of her contention, Petitioner alleges that her attorney should have requested a departure under U.S.S.G. § 5H1.6 because Petitioner was responsible for taking care of her elderly mother. This argument is without merit.

Section 5H1.6 directs that "family ties and responsibilities are <u>not</u> ordinarily relevant in determining whether a departure may be warranted." U.S.S.G. § 5H1.6 (emphasis added). Although family ties are a disfavored consideration, the application note to § 5H1.6 provides that a departure may be warranted in limited circumstances if, among other factors, the loss of caretaking support substantially exceeds the harm ordinarily incident to incarceration or is one for which no effective remedial or ameliorative programs reasonably are available. See U.S.S.G. § 5H1.6, Application Note 1. There is no evidence in the record or in Petitioner's motion, however, to suggest that the loss of her ability to take care of her mother was extraordinary or

9

could not otherwise be remedied. Accordingly, § 5H1.6 is unhelpful to Petitioner, and her attorney's failure to raise it was not ineffective assistance.

Furthermore, although Petitioner's attorney did not specifically reference § 5H1.6, she did include Petitioner's care for her disabled mother in her discussion of the § 3553(a) sentencing factors—an argument Petitioner's son repeated when he addressed the Court. (Criminal Case No. 3:10-cr-282, Doc. No. 28 at 14, 16-17: Sentencing H'rg Tr.). In announcing Petitioner's sentence, this Court also specifically referenced that argument, stating that it considered "the caretaking role that Ms. Graves plays with her mother." (Id. at 25). Petitioner is therefore unable to show that her attorney provided ineffective assistance or that she suffered prejudice based on counsel's alleged failure to raise the issue of Petitioner's caretaking responsibility for her elderly mother.

3. **Petitioner's Claim that She "Was Deprived of the Rights of Honest, Ethical, and Moral Service"**
4.

Finally, in support of her ineffective assistance of counsel claims, Petitioner contends without elaboration that Attorney Thomas Porter represented her during a meeting with federal officers and "made several errors in communication between defendant and government…thereby resulting in defendant's incarceration." (Doc. No. 1 at 15). Although Petitioner does not describe the nature of the meeting at issue, the statement of the offense conduct contained in the presentence report—to which both parties stipulated at the sentencing hearing—explains that Petitioner participated in a meeting with investigators before being charged, during which she described the nature of the wire fraud conspiracy and her involvement. (Criminal Case No. 3:10-cr-282, Doc. No. 15 at 6: PSR). Petitioner does not explain, however, how Attorney Porter provided ineffective assistance at this or any other

10

meeting, other than her bald assertion that he "mislead [sic] defendant and made false promises." (Doc. No. 1 at 14). Such a vague, conclusory assertion is insufficient to establish ineffective assistance.

Assuming <u>arguendo</u> that Petitioner was able to prove she received ineffective assistance at her meeting with investigators, she is nevertheless unable to satisfy the prejudice prong. At the time of the meeting, Petitioner's involvement in the conspiracy was already well established. Officers had conducted five undercover transactions with Petitioner involving stolen gift cards and unlawfully obtained driver's licenses, and one of Petitioner's co-conspirators had identified her as a participant in the scheme. (Criminal Case No. 3:10-cr-282, Doc. No. 15 at 5-6: PSR). Petitioner's statements were therefore not the only evidence against her but, instead, corroborated what officers already knew. As such, rather than place Petitioner in a "compromised position," Petitioner's willingness to cooperate in the investigation ultimately improved her situation by providing grounds for the Government's motion for downward departure, which this Court granted. In sum, contrary to Petitioner's characterization, her timely cooperation did not harm her by providing the exclusive evidence of her guilt but, rather, resulted in a lower sentence based on U.S.S.G. § 5K1.1.

> B. **Petitioner's Claim of Prosecutorial Misconduct Based on Petitioner's Contention that the Government Breached its Agreement with Petitioner**
> C.

Petitioner next claims that the Government committed prosecutorial misconduct by (1) breaching an alleged agreement not to prosecute Petitioner and (2) by failing to make a motion for downward departure based on Petitioner's substantial assistance. Each of these claims is contradicted by the facts and therefore without merit. Courts review claims of prosecutorial misconduct "to determine whether the conduct 'so infected the trial with unfairness as to make

11

the resulting conviction a denial of due process.'" United States v. Scheetz, 293 F.3d 175, 186 (4th Cir. 2002) (quoting United States v. Morsley, 64 F.3d 907, 913 (4th Cir. 1995)). To prove a claim of breach, Petitioner bears the burden of proving the existence of an agreement and the government's breach of that agreement. United States v. Snow, 234 F.3d 187, 189 & n.2 (4th Cir. 2000); see also United States v. McHan, 101 F.3d 1027, 1034 (4th Cir. 1996).

Petitioner's first claim of breach—that the Government agreed not to prosecute her and not to hold any information she provided against her—is directly contradicted by the terms of the plea agreement and Petitioner's sworn statements during the Rule 11 hearing. The plea agreement required Petitioner to provide truthful information about the wire fraud conspiracy and stated that the Government would not use any such information against the defendant "in any other criminal proceeding." (Criminal Case No. 3:10-cr-282, Doc. No. 5 at 5: Plea Agreement (emphasis added)). Accordingly, Petitioner's cooperation was required as a key term of the agreement, and there was nothing prohibiting the Government from using that information in this case. Petitioner's self-serving suggestion that the Government agreed not to prosecute her in exchange for her cooperation is also contradicted by the terms of the plea agreement and her sworn statements at the plea hearing. Specifically, the plea agreement explained that there were no other agreements between the parties, stating, "There are no agreements, representations, or understandings between the parties in this case, other than those explicitly set forth in this Plea Agreement, or as noticed to the Court during the plea colloquy and contained in writing in a separate document signed by all parties." (Id., Doc. No. 5 at 6). During the Rule 11 hearing, Petitioner explicitly agreed with this term following the Government's summary of the plea agreement and made no mention of any extrinsic agreement not to prosecute. (Id., Doc. No. 27

at 11: Plea H'rg Tr.). Petitioner also agreed during the colloquy with Judge Cayer that no one had made any promises of leniency or for a light sentence, other than the terms set forth in her plea agreement. (Id. at 12). Petitioner has failed to show "extraordinary circumstances"—or offer any proof whatsoever—to contradict her sworn statements at the Rule 11 hearing or the terms of her written plea agreement. See Lemaster, 403 F.3d at 221-22. Petitioner has therefore failed to carry her burden of proof to establish the existence of an extrinsic agreement by the Government not to prosecute her.

Petitioner's second claim of breach—that the Government failed to make a motion for downward departure based on Petitioner's substantial assistance—misconstrues the Government's obligations under the plea agreement and is directly contradicted by the facts. The plea agreement did not require the Government to make a motion for reduction of sentence but, instead, provided that the Government "may" make such a motion if it determined, "in its sole discretion," that the defendant had rendered substantial assistance. (Criminal Case No. 3:10-cr-282, Doc. No. 5 at 6: Plea Agreement). Even though the Government was not obligated to move for a sentence below the guidelines range, the Government did in fact make such a motion based on Petitioner's substantial assistance—a motion that this Court ultimately granted in sentencing Petitioner to eighteen months. Accordingly, Petitioner's claim of prosecutorial conduct is without merit.

IV.    **CONCLUSION**

For the reasons stated herein, the Court will dismiss the § 2255 petition.

**IT IS, THEREFORE, ORDERED** that:

1. Petitioner's § 2255 motion to vacate, (Doc. No. 1), is **DENIED** and **DISMISSED**.

2. Pursuant to Rule 11(a) of the Rules Governing Section 2255 Cases, this Court declines to issue a certificate of appealability as Petitioner has not made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Miller–El v. Cockrell, 537 U.S. 322, 336-38 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong).

Signed: July 20, 2015

Robert J. Conrad, Jr.
United States District Judge